IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

NORTHERN DIVISION

**UNITED STATES OF AMERICA**

**vs.**                             CRIMINAL NO. 3:18-cr-50-DCB-LRA-001

                                CIVIL NO. 3:19-cv-547-DCB

**BILAL HAMID LOVE**                                          **DEFENDANT**

ORDER

This cause is before the Court on the Defendant Bilal Hamid Love ("Love")'s Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion to Vacate") [ECF No. 35] and his Motion for an Evidentiary Hearing and to Appoint Counsel [ECF No. 38]. Having read the Motion, response thereto, applicable statutory and case law, and being otherwise fully informed of the premises, the Court finds as follows:

Background

On March 7, 2018, Love was charged in a four-count indictment with: (1) possession with intent to distribute a mixture or substance containing AB-PINACA[1] in violation of 21 U.S.C. § 841(a)(1)(C) and 18 U.S.C. § 2; (2) knowingly and

---

[1] AB-PINACA is a Schedule I controlled substance under the Controlled Substance Act, 21 U.S.C. § 801, et. seq.

1

intentionally importing AB-PINACA in violation of 21 U.S.C. § 952 and 18 U.S.C § 2; (3) maintaining a residence for the purpose of manufacturing a substance containing AB-PINACA in violation of 21 U.S.C. § 841(a)(1); and (4) knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 841(a)(1). [ECF No. 50].

On October 24, 2018, Love pleaded guilty as to Counts 2 and 4 of the indictment, knowingly and intentionally importing AB-PINACA and knowingly possessing a firearm in furtherance of a drug trafficking crime. Id. In February 2019, Love was sentenced to a 168-month term of imprisonment followed by a five-year term of supervised release. Id. No appeal was taken. In the instant Motion to Vacate, Love argues that he was denied effective assistance of counsel.

## Standard of Review

Upon conviction and waiver of any right to appeal, "a court is normally entitled to presume the defendant stands fairly and finally convicted." United States v. Willis, 273 F. 3d 592, 595 (5th Cir. 2001). However, the Court may "consider a defendant's collateral attack on a federal sentence through a § 2255 motion," specifically granting relief for errors which occurred during trial or at sentencing. Nalls v. United States, 2019 WL 3536821, at *3 (W.D. Tex. Aug. 2, 2019).

In a § 2255 motion, the movant "bears the burden of sustaining his convictions by a preponderance of the evidence." Wright v. United States, 624 F. 2d 557, 558 (5th Cir. 1980) (internal citations omitted). The movant must show that: "(1) his sentence was imposed in violation of the Constitution or the laws of the United States; (2) the sentencing court was without jurisdiction to impose the sentence; (3) the sentence was more than the maximum authorized by law; or (4) the sentence was otherwise subject to collateral attack." United States v. Seyfert, 67 F. 3d 544, 546 (5th Cir. 1995) (citations omitted).

If the motion, files, and records of the case "conclusively show that the prisoner is entitled to no relief," the court may deny a § 2255 motion without a hearing. Wright, 624 F. 2d at 558, see 28 U.S.C. § 2255(b). In making its determination, this Court "scan[s] the entire record for facts supporting [the Petitioner's] conviction." United States v. Ortiz, 927 F. 3d 868, 872-73 (5th Cir. 2019) (citations omitted).

Furthermore, courts have long enforced waivers of collateral-attack rights in plea agreements. See, e.g., United States v. Wilkes, 20 F. 3d 651, 653 (5th Cir. 1994) ("As a general matter, therefore – and at least under the facts and circumstances of this case – an informed and voluntary waiver of post-conviction relief is effective to bar such relief."); see

3

also Garcia-Santos v. United States, 273 F. 3d 506, 509 (2d Cir. 2001). Generally, "a voluntary, unconditional guilty plea waives all non-jurisdictional defects in the proceedings against the defendant." United States v. Hoctel, 154 F. 3d 506, 507 (5th Cir. 1998).

## Discussion

Love entered into a plea agreement which waived his right to appeal, to file a § 2255 petition, and to seek attorney fees. [ECF No. 24]. Love retained the right to file an ineffective assistance of counsel claim, which he now does in this suit. The Government asserts that Love's waiver is valid because he did not receive ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, the petitioner must show "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient performance requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. In the context of a plea to satisfy the prejudice requirement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474

U.S. 52, 59 (1985). Judicial scrutiny of this type of claim must be highly deferential and the defendant must overcome a "strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

In support of his argument that he received ineffective assistance from counsel, Love alleges the following: (1) his counsel should have objected to the Presentence Report ("PSR") and the drug conversion weight used in calculating his sentence; (2) counsel should have argued McFadden v. United States; (3) counsel should have investigated the validity of the search warrant and accompanying affidavit; (4) counsel should have objected to the firearms nexus; (5) his plea was not knowing, intelligent, or voluntary; (6) counsel did not file a notice of appeal; (7) double jeopardy was present; (8) and the totality of the circumstances requires an evidentiary hearing.

The first four ineffective assistance of counsel arguments directly relate to counsel's defense strategy. In evaluating whether counsel's defense strategy was constitutionally deficient, "judicial scrutiny of counsel's performance must be highly deferential" and courts "must indulge a strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance." Strickland, 449 U.S. at 689; see U.S. v. Walker, 68 F. 3d 931, 934 (5th Cir. 1996).

Love first alleges that his counsel's defense strategy was ineffective because she failed to object to the ratio of converted drug weight and did not argue for an alternative drug weight conversion ratio. Love argues the weight of the AB-PINACA should be converted at a ratio of 1:17 rather than the 1:167 ratio used by the Court. The crux of Love's argument rests on United States v. Malone, 828 F. 3d 331 (5th Cir. 2016). However, his reliance on Malone is misplaced. Malone affirmed the district court's reliance on the 1:167 ratio for converting Tetrahydrocannabinol (THC) into marijuana, the ratio applied herein. Id. at 339. Moreover, Love stipulated in his plea documents and confirmed that AB-PINACA is most closely related to THC and that the appropriate ratio to use is 1 gram of THC to equal 167 grams of marijuana.

Additionally, Love argues that his counsel was ineffective by failing to seek and obtain discovery. [ECF No. 37]. However, defense counsel stated in a signed affidavit that she obtained discovery from Love's previous counsel shortly after her representation of Love began. [ECF No. 46]. Counsel's defense strategy is consistent with applicable law and shows no error or resulting prejudice.

Love's second defense strategy argument states that his counsel's assistance was ineffective because she failed to argue McFadden v. United States, 135 S. Ct. 2298 (2015) which requires that the government prove that the defendant had knowledge that an analogue was a controlled substance under federal law. Id. at 2303. Love argues he did not have knowledge that the substance was controlled under federal law, evidenced by the fact that he wrote the United States Probation Office prior to sentencing and stated he did not research AB-PINACA. The weight of the evidence supports the contrary.

Counsel states in her affidavit that she believed the government would argue that Love's efforts to hide his identity by using the name Michael Smith for incoming packages suggested that he knew the illegal nature of the material, and further, that it demonstrated intent and planning. [ECF No. 46]. Subsequent deceptive statements provided by Love during his initial detention demonstrate that he used a false name (Michael Smith) to conceal his illegal use of the building for his mail order enterprise. Id.

Defense counsel's strategic choices are virtually unchallengeable when made after thorough investigation of law and facts relevant to plausible options. Rhoades v. Davis, 852 F. 3d 434 (5th Cir. 2017). Through discovery, counsel determined

7

Love had knowledge of the illegality of the possession of the AB-PINACA. [ECF No. 46]. Counsel made a decision that fell "within the wide range of reasonable professional assistance" by not presenting an argument which was against the weight of the evidence that Love was aware of the illegal nature of AB-PINACA. Strickland, 449 U.S. at 689; see also Walker, 68 F. 3d 931 at 934. Counsel's conduct was reasonable and does not constitute ineffective assistance.

Love's third argument states his counsel's defense strategy was ineffective because counsel failed to investigate a search warrant issued for "methamphetamine … and/or other controlled substances" and its accompanying affidavit. Also, counsel did not request a Franks hearing to address allegations of false statements in warrant affidavits. See Franks v. Delaware, 438 U.S. 154 (1978)(setting out the legal principles that govern how courts address allegations of false statements in warrant affidavits).

Love bases this argument on a perceived conflict between a Report of Investigation and a search warrant affidavit. A case agent conducted a field test of "5 pounds of tannish brown substance." [ECF No. 50]. The agent's Report claimed that the field test came back positive for methamphetamine whereas the search warrant affidavit tested positive for ecstasy. Counsel

8

and the Defendant discussed the fact that the field test came back positive for methamphetamine. As counsel states in her affidavit:

> "He was concerned that the field test of the substance in the box was positive for Methamphetamine and he believed there were admissibility issues with the ability of the government to use that evidence at trial. I explained that field tests are not conclusive but identify a possible controlled substance. The results are certified by the lab results. The results confirm their probable cause for arrests and other search warrants. The fact that they were valid allows the government to prevail on suppression issues."

[ECF No. 46] at 5. Additionally, counsel told Love she would file motions to exclude evidence (even though she believed they were not valid) if Love chose to proceed to trial. [ECF No. 46]. Love ultimately chose to plead rather than proceed to trial. Counsel's evidentiary review and subsequent explanation to Love demonstrates reasonable professional judgment. Love has failed to show counsel acted unreasonably.

Love's final argument suggests that counsel failed to attempt to disprove the nexus between his firearms and drug trafficking activity. The firearm enhancement added 60 months to the 108 months assigned for the importation charge. However, counsel's affidavit reports that she contacted the AUSA about the firearms and was advised that it was their policy to pursue all firearm charges for drug cases and that they would not exclude it from the plea offer. See id. at 6. Counsel also

9

states that she attempted to acquire a copy of any hunting license that would prove Love's firearms were solely for hunting and recreational purposes, but that Love's family did not provide the requested materials. See id.

Counsel clearly investigated any potential avenues in which to address or mitigate the nexus between the firearms and drug trafficking activities. Furthermore, in his letter to United States Probation, Love admitted to knowing that it is illegal to have weapons around synthetic marijuana and that he accepted full responsibility. [ECF No. 37]. Love waived any argument against the manner of forfeiture to be ordered in this case, to which he acknowledged orally and in his signed plea agreement. Love has failed to meet his burden.

In support of his argument that he received defective counsel, Love makes the following arguments unrelated to counsel's strategy of defense: (1) his plea was not knowing, intelligent, or voluntary; (2) counsel did not file a notice of appeal; (3) double jeopardy was present; (4) and the totality of the circumstances requires an evidentiary hearing.

Love claims his plea was not knowing, intelligent, or voluntary because his counsel:

> "never tried to defend the case at bar; she never filed one motion, except for a continuance.  She never requested any discovery or production of documents;

10

> she never sought to challenge the indictment based on the variances and false statements in the agents (sic) declarations regarding substances, some positive, some negative or that no meth existed, even in any package, but is what Agent Creel relied on for the search warrant."

[ECF No. 37] at 28–29. Whether a guilty plea was "knowing" turns on whether a defendant understood the consequences of a plea, including the maximum possible penalty. United States v. Hernandez, 234 F. 3d 252, 255 (5th Cir. 2000). The "voluntariness" of a plea depends on whether the plea was induced by misrepresentation, threats, or unfulfilled or improper promises. Id.

At the plea hearing, the Court made certain that Love understood the consequences of his plea and the maximum possible penalty for each offense. Love agreed that no one had made any promises or side agreements in furtherance of his plea or outside of his plea. The Court asked Love whether he had "ample opportunity to discuss [his] case with [his] attorney" to which he replied "[y]es, sir". [ECF No. 50]. Love confirmed to the Court that he was satisfied with the amount of time his counsel spent with him and the advice she gave. Id. He further stated he had no complaints regarding his counsel's representation. Id. He acknowledged reviewing the indictment with his counsel, as well as the possible defenses. Id.

A plea is intelligent so long as "a criminal Defendant first receives real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." Bousley v. United States, 523 U.S. 614, 618 (1998)(internal citations omitted). Counsel also advised Love of the sufficiency and weight of evidence against him and discussed alternative options and realistic possible sentences. [ECF No. 46]. Love was properly advised, and his plea was knowing, intelligent, and voluntary.

Love's furthered this "knowing" argument in his reply to the government's response. Love argues that he was "expressing doubts" about whether he should plead and that he was "misled" of the severity of the sentencing range prior to pleading guilty to counts 2 and 4. [ECF No. 56]. Regardless, to demonstrate prejudice, Love "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." See Hill, 474 U.S. at 59. Love's alleged doubts do not suggest counsel was a certain "but for" cause of the plea.

Courts do not require counsel to give each defendant "anything approaching a detailed exegesis of the myriad arguably relevant nuances of the [Federal Sentencing] Guidelines." United States v. Day, 969 F. 2d 39 (3d Cir. 1992). Love ultimately

entered a plea in order to avoid a trial and in exchange the Government dropped counts 1 and 3. Had the defendant been found guilty of all Counts, his sentence would have been much higher. Counsel satisfied her obligation by informing Love of all of his rights as well as the consequences of his plea. Considering the highly deferential nature of this standard, Love's argument fails because he does not demonstrate that but for counsel's advice he would have chosen to go to trial. Additionally, the Defendant has not alleged or established any prejudice from his decision to enter a plea. Had he chosen to go to trial on the four-count indictment, he would have faced a significantly higher maximum penalty than the one he pleaded to.

Furthermore, "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The Court thoroughly questioned the Defendant in his Change of Plea hearing. Considering the Defendant's response to the Court's questions and his counsel's advice prior to his change of plea, it is clear his plea was knowing, voluntary, and intelligent.

Love argues counsel's failure to file a notice of appeal constitutes ineffective assistance. Love's affidavit states that at the sentencing hearing, counsel informed him that she could no longer represent him because of her election as Circuit Court

Judge for Hinds County. [ECF No. 35]. Love claims he then asked counsel to file a notice of appeal and that she indicated that she would do so. Id. However, Love acknowledges in his brief that counsel informed him that she no longer represented him. It is unreasonable to conclude that counsel would file a notice of appeal on Love's behalf after plainly stating to Love that her representation had ended. Additionally, at the beginning of her representation of Love, counsel provided a written retainer which made clear that her representation would cease at the conclusion of his district court representation. [ECF No. 46]. Love has not shown a violation of an objective standard of reasonable representation.

Love next argues a constitutional claim of double jeopardy. Love seems to claim that any federal funding to a state or municipality would prohibit the United States from seeking prosecution of an individual who was investigated by that state and the United States. [ECF No. 50]. Love acknowledges that his claim here may be "frivolous." [ECF No. 37]. The Defendant's double jeopardy claim is frivolous and must fail.

The Defendant, in his double jeopardy argument, claims that his counsel assured him that his state cases would be dismissed. On the docket of two separate state circuit courts in Mississippi appear cases against Love originating from the

investigation of his AB-PINACA importation. Correspondence between counsel and the Defendant is as follows:

> [I]t was my understanding that in at least one of the circuits the charges had already been dismissed. I spoke to the District Attorney in the other county and they were going to dismiss upon receipt of the notice that he had been convicted. The prosecutor for the government confirmed the same communication with the court. I will try to get this cleared up within the next couple of weeks.

See Exhibit 7, Mem. in Supp. of Mot. to Vacate, ECF No. 35-8, 2. It is clear that counsel, in the abovementioned correspondence, did not make any promises to Defendant that the state claims against him would be dismissed. She was merely relaying information to her client. Further, there is no promise to have the state charges dismissed to entice the Defendant to enter a plea in his federal case.

Where a guilty plea is induced by defense counsel's false assurances, it may be invalid. Harmason v. Smith, 888 F. 2d 1527, 1529 (5th Cir. 1989). However, no statement exists to prove Love relied on any such promise in order to enter into the plea in this case. Additionally, Love's signed plea agreement does not bind other jurisdictions and Love acknowledged that there existed no promises or side agreements not stated in the plea agreement. A "defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath." U.S. v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998).

Love's testimony refutes his claims here and he has not provided sufficient evidence that any promises induced his plea. His claims lack merit.

Love's final claim argues that the totality of his claims of ineffective assistance requires an evidentiary hearing and further that his case should be vacated. [ECF No. 37]. The Court need not hold an evidentiary hearing if the movant/prisoner fails to produce "independent indicia of the likely merit of his allegations." <u>United States v. Edwards</u>, 442 F. 3d 258, 264 (5th Cir. 2006). Love has failed to produce such indicia to show the merit of his allegations. Love's claims are refuted by counsel's affidavit, hearing transcripts, and plea documents. The record before the Court is sufficient.

Accordingly,

IT IS HEREBY ORDERED that the Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 is DENIED;

IT IS FURTHER ORDERED that Petitioner's Motion for an Evidentiary Hearing [ECF No. 38] is DENIED and Motion to Appoint Counsel [ECF No. 38] is MOOT inasmuch as Honorable Gary Alan Udashen has undertaken representation of the Petitioner.

SO ORDERED this the 27th day of August, 2020.

                                                            __/s/ David Bramlette_____

                                                            UNITED STATES DISTRICT JUDGE